1
2
3
4
5
6
7
8
9
10

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE TORRES, | No.  2:19-CV-1246-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, see ECF Nos. 3 and 8, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment, see 28 U.S.C. § 636(c).  Pending before the court are the parties' briefs on the merits.  See ECF Nos. 16 and 20.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

1  a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).  The record as a whole,

2  including both the evidence that supports and detracts from the Commissioner's conclusion, must

3  be considered and weighed.  <u>See Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones</u>

4  <u>v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

5  decision simply by isolating a specific quantum of supporting evidence.  <u>See Hammock v.</u>

6  <u>Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

7  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

8  Commissioner is conclusive.  <u>See Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

9  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

10 which supports the Commissioner's decision, the decision must be affirmed, <u>see Thomas v.</u>

11 <u>Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12 standard was applied in weighing the evidence, <u>see Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th

13 Cir. 1988).

14          For the reasons discussed below, the Commissioner's final decision is affirmed.

15

16                    **I.  THE DISABILITY EVALUATION PROCESS**

17          To achieve uniformity of decisions, the Commissioner employs a five-step

18 sequential evaluation process to determine whether a claimant is disabled.  <u>See</u> 20 C.F.R.

19 §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

20                Step 1      Determination whether the claimant is engaged in
21                            substantial gainful activity; if so, the claimant is presumed
                             not disabled and the claim is denied;

22                Step 2      If the claimant is not engaged in substantial gainful activity,
                             determination whether the claimant has a severe
23                           impairment; if not, the claimant is presumed not disabled
                             and the claim is denied;
24
25                Step 3      If the claimant has one or more severe impairments,
                             determination whether any such severe impairment meets
26                           or medically equals an impairment listed in the regulations;
                             if the claimant has such an impairment, the claimant is
27                           presumed disabled and the claim is granted;

28 / / /

| Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |

| Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on November 1, 2012. <u>See</u> CAR 20.[1]
In the application, plaintiff claims disability began on November 15, 2007.  <u>See</u> <u>id.</u>  Plaintiff's
claim was initially denied.  Following denial of reconsideration, plaintiff requested an
administrative hearing, which was held on September 26, 2014, before Administrative Law Judge
(ALJ) Odell Grooms.  In a December 5, 2014, decision, the ALJ concluded plaintiff is not
disabled based on the following relevant findings:

> 1. The claimant has the following impairment(s): neck, back, and knee pain secondary to a strain; adjustment disorder; and polysubstance abuse disorder in longstanding remission; and
>
> 2. The claimant's impairments are not severe because they have not significantly limited the ability to perform basic work activities for at least 12 consecutive months;
>
> <u>See</u> <u>id.</u> at 22-30.

After the Appeals Council declined review on May 5, 2016, plaintiff sought
judicial review by the District Court, <u>Torres v. Commissioner of Social Security</u>, E. Dist. Cal.
case no. 2:16-CV-1574-EFB.  On September 25, 2017, the court issued a decision remanding for
further proceedings.  <u>See</u> CAR 450-58.  The court concluded the ALJ's finding that plaintiff does
not have severe impairments could not be sustained because the ALJ failed to provide legally
sufficient reasons to tacitly reject the opinions of Dr. Schwartz.  <u>See</u> <u>id.</u>

On remand, a second hearing was held on April 19, 2018, before the same ALJ.
On June 10, 2018, the ALJ issued a second hearing decision finding plaintiff not disabled based
on the following findings:

> 1. The claimant has the following severe impairment(s): lumbar degenerative disc disease; osteoarthritis of the lower lumbar spine; bilateral hip degenerative changes; status post inguinal hernia repair; and probable bilateral carpal tunnel syndrome;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on October 22, 2019.  <u>See</u> ECF No. 10.

3.     The claimant has the following residual functional capacity: the claimant can perform medium work; the claimant can frequently stoop, kneel, crouch, and crawl; the claimant can frequently handle with the bilateral upper extremities;

4.     Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 345-56.

After the Appeals Council declined review of the second hearing decision on June 10, 2018, this second action for judicial review followed.

## III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ's residual functional capacity assessment is flawed because the ALJ rejected every opinion offered by an examining doctor; (2) the ALJ failed to develop the record; and (3) the ALJ failed to properly assess plaintiff's credibility.

### A.  Medical Opinions

"The ALJ must consider all medical opinion evidence."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social

5

workers are not considered an acceptable medical source.  <u>See</u> <u>Turner v. Comm'r of Soc. Sec.</u>
<u>Admin.</u>, 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants
also are not acceptable medical sources.  <u>See</u> <u>Dale v. Colvin</u>, 823 F.3d 941, 943 (9th Cir. 2016).
Opinions from "other sources" such as nurse practitioners, physician assistants, and social
workers may be discounted provided the ALJ provides reasons germane to each source for doing
so.  <u>See</u> <u>Popa v. Berryhill</u>, 872 F.3d 901, 906 (9th Cir. 2017), <u>but see</u> <u>Revels v. Berryhill</u>, 874
F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance
when opinions from "other sources" may be considered acceptable medical opinions).

       The weight given to medical opinions depends in part on whether they are
proffered by treating, examining, or non-examining professionals.  <u>See</u> <u>Lester v. Chater</u>, 81 F.3d
821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating
professional, who has a greater opportunity to know and observe the patient as an individual, than
the opinion of a non-treating professional.  <u>See id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th
Cir. 1996); <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the
opinion of a non-examining professional.  <u>See</u> <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 & n.4 (9th
Cir. 1990).

       In addition to considering its source, to evaluate whether the Commissioner
properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in
the record; and (2) clinical findings support the opinions.  The Commissioner may reject an
uncontradicted opinion of a treating or examining medical professional only for "clear and
convincing" reasons supported by substantial evidence in the record.  <u>See</u> <u>Lester</u>, 81 F.3d at 831.
While a treating professional's opinion generally is accorded superior weight, if it is contradicted
by an examining professional's opinion which is supported by different independent clinical
findings, the Commissioner may resolve the conflict.  <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035,
1041 (9th Cir. 1995).

/ / /

/ / /

/ / /

1              A contradicted opinion of a treating or examining professional may be rejected

2    only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d

3    at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the

4    facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

5    finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

6    legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

7    professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

8    without other evidence, is insufficient to reject the opinion of a treating or examining

9    professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

10   conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

11   1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

12   also Magallanes, 881 F.2d at 751.

13             At Step 4 of the sequential evaluation, the ALJ considered the medical opinions of

14   record.  See CAR 352-53.  Specifically, the ALJ discussed opinions provided by: (1) agency

15   examining physician, Dr. Bermudez; (2) agency examining physician, Dr. Schwartz; (3) treating

16   chiropractor, Dr. Elder; and (4) agency reviewing physicians, Drs. Whaley and Sheehy.  See id.

17   The ALJ rejected the agency reviewing doctors' opinion that plaintiff has no severe physical

18   impairments or limitations.  See id. at 353.  The ALJ also rejected the opinions offered by

19   plaintiff's treating chiropractor because it was based on only one treatment visit.  See id. at 352-

20   53.  The ALJ rejected Dr. Schwartz' opinion, finding it unsupported by objective findings.  See

21   id. at 352.  Finally, the ALJ gave Dr. Bermudez' opinion "partial weight."  Id.

22             According to plaintiff: "the ALJ rejected every examining opinion in the record

23   and acted as his own medical expert warranting remand."  ECF No. 16, pg. 14.  Plaintiff adds:

24   "Rather than properly evaluating the two sole opinions in the record, the ALJ acted as his own

25   physician and adopted a residual functional capacity not opined by any examining or

26   nonexamining physician in the record."  Id. at 17.

27   / / /

28   / / /

At the outset, the Court notes that plaintiff is in error in stating the ALJ rejected every examining opinion.  While the ALJ did not fully adopt any of the opinions rendered by the examining and non-examining professionals, the ALJ did give "partial weight" to the opinion of Dr. Bermudez' opinion, who examined plaintiff.  The Court also rejects plaintiff's suggestion that the record contains "two sole opinions."  As outlined above, the ALJ considered medical opinions from five sources – Drs. Schwartz and Bermudez, Dr. Elder, and two non-examining doctors. The hearing decision reflects that the ALJ considered all of these opinions.  Finally, the Court rejects plaintiff's suggestion the ALJ may not rely solely on opinions provided by non-examining or non-treating professionals.  See Thomas v. Barnhart, 278 F.3d at 957 (holding that the opinions of non-examining professionals constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

The gravamen of plaintiff's argument is that the ALJ acted as his own medical expert "[r]ather than properly evaluating" the opinions offered by what plaintiff mischaracterizes as the "two sole sources" of examining opinions – Drs. Bermudez and Schwartz.

As to Dr. Bermudez, the ALJ stated:

. . .After evaluating the claimant in 2012, Dr. Rita Bermudez, the State Agency consultative examiner, opined (2F/5):

"Mr. Torres has a history of back pain that is primarily noted with bending, prolonged weight bearing and lifting.  He also has right groin pain with lifting.  He would improve if he could have his right inguinal hernia repaired.  However, he has no health insurance for this.  Sitting should be limited to 5 hours intermittently in an 8-hour day.  He needs a cushioned chair in order to avoid pain over the tailbone.  Walking and standing are restricted to 3 hours in an 8-hour day.  He should avoid cold environments.  He can reach, handle, finger and feel with restrictions limiting prolonged repetitive forceful pushing and pulling to less than 50 pounds and on an occasional basis.  Driving should be limited to 4 hours intermittently in an 8-hour day.  He can lift up to 30 pounds occasionally and 15 pounds frequently. He should avoid climbing stairs, ladders or scaffolds.  He can operate foot controls.  Bending, squatting and kneeling are limited to occasional."

I gave that opinion only partial weight noting that Dr. Bermudez found the claimant to have 5/5 strength, normal ranges of motion, normal reflexes, and normal sensation in all extremities (2F).  During exams, the claimant was able to climb on and off the exam table without difficulty and moved from sit to supine and back without difficulty (2F, 5F).  He was able to

walk without difficulty, do a full squat, sit comfortable during exams, and stand on his toes and heels (2F, 5F).

CAR 352.

Plaintiff argues:

> In this case, Dr. Rita Bermudez, performed a consultative examination at the request of the Department of Rehabilitation on September 18, 2012, and found Torres capable of, what appears to be a "sedentary" to "light" range of work. AR 318. Social Security Ruling 83-10. Dr. Bermudez limited Torres sitting to five hours intermittently a day with a cushioned seat, walking and standing to three hours in a day, lifting up to 30 pounds occasionally and 15 frequently, with no ladders and scaffolds and occasional bending, squatting and kneeling. AR 318.
>
> The ALJ rejected Dr. Bermudez' examining opinion stating that Torres had 5/5 strength, normal ranges of motion normal reflexes and normal sensation in all extremities and was able to climb on and off the exam table without difficulty in both Dr. Bermudez exam and Dr. Schwartz. AR 352. The ALJ's rationale is without merit. The fact that Mr. Torres can get on and off of an examination table and does not have reduced strength does not discredit Dr. Bermudez' well educated and medically reasoned opinion nor the objective findings that the ALJ ignored.
>
> Dr. Bermudez also noted positive Phalen's sign bilaterally in his wrists, mild tenderness in the cervical muscles but trigger points in the right trapezius, mild crepitus in the neck, the lumbar spine was tender with a palpable lump on the right groin, increased pain with range of motion of the back, and crepitus in his knees in a squat. AR 315-317. Dr. Bermudez diagnosed Torres with mechanical low back pain, right inguinal hernia, frequent headaches due to myofascial pain syndrome, probably bilateral degenerative joint disease of the knees, probably bilateral carpal tunnel syndrome, and coccydynia. AR 318.
>
> The Commissioner cannot simply ignore those portions of an opinion that do not fit the predetermined conclusion. does not have to discuss all of the evidence presented to her. The Commissioner has isolated a specific quantum of evidence and has ignored other relevant evidence to support of his determination warranting reversal. *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984). See also, *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 194-95 (9th Cir. 1984) (the Commissioner must explain why "significant probative evidence has been rejected.") It is the objective findings that the ALJ ignored that gave weight to the more limited opinion offered by Dr. Bermudez.

ECF No. 16, pgs. 14-15.

As to Dr. Schwartz, the ALJ stated:

> When evaluated afterward, Dr. Jonathan Schwartz, the State Agency consultative examiner, opined that the claimant could lift 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours; frequently kneel/crouch/crawl and had no added limitations (5F). After considering this opinion, I found it to be based largely on the claimant's subjective

1    reports and not supported by the objective medical evidence, which
2    showed normal strength in all extremities, normal gait/sensation, and
     normal senses/reflexes.

3    Id.

4    According to plaintiff:

5         Likewise, the ALJ rejected the agencies own consultative
6    examiner, Dr. Jonathan Schwartz, who opined Torres was limited to light
     exertional work, slightly less limited than Dr. Bermudez, the ALJ states he
6    finds "it to be based largely on the claimants subjective reports and not
7    supported by the objective medical evidence which showed normal
     strength in all extremities normal gait/station and normal senses/reflexes."
8    AR 352. Again, the ALJ is looking only to the normal strength senses and
     reflexes and ignoring the swelling in the anterior groin (the hernia), and
9    crepitus of the right knee or the x-rays of the lumbar spine showing
     anterior wedging deformity of the L1 vertebra, posterior subluxation at
10   L3-L4, and degenerative disc disease L3-L4 through L5-S1 and x-ray of
     the left knee showing a subchondral cyst. AR 326-329. Again, the ALJ is
11   looking to only what he wishes to see in Dr. Schwartz report and the
     longitudinal record. The ALJ ignores the objective evidence of the open
12   right inguinal hernia repair with mesh performed on December 11, 2013,
     that precluded his ability to lift or climb ladders because of the hernia. AR
13   599-601. Dr. Schwartz' opinion was just 9 months before the hernia was
     repaired and hernias are aggravated by lifting. It is not only a reduced
14   range of motion, strength or sensation that warrants limitation. In addition,
     subsequent x-rays showed "*advanced osteoarthritis* of the lower lumbar
15   spine" and chronic anterior wedging "most advanced in the lumbar spine,
     characterized by intervertebral disc space narrowing, osteophyte
16   formation, *vacuum disc phenomenon*, and facet arthropathy." (Emphasis
     Added) AR 611. An MRI dated April 11, 2018, showed mild to moderate
17   degenerative changes at both hips and a small fat containing left inguinal
     hernia. AR 606. This was after the hernia had already been repaired.

18
     ECF No. 16, pg. 16.
19

20        Here, the ALJ partially accepted Dr. Bermudez' opinion and rejected Dr.

21   Schwartz' opinion, finding them inconsistent with the doctors' own observations on

22   examination.  The Court disagrees with plaintiff that the ALJ acted as his own medical

23   expert.  To the contrary, the opinions offered by Drs. Bermudez and Schwartz were

24   contradicted by those offered by other medical professionals.  Specifically, the agency

25   reviewing doctors both found that plaintiff has no severe impairments at all.  The ALJ is

26   permitted to resolve such a conflict and did so by rejecting the agency reviewing doctors'

27   opinions, rejecting Dr. Schwartz' opinion, and partially accepting Dr. Bermudez'

28   opinion.  Moreover, the ALJ did so by relying on a valid reason – objective findings on

examination that are inconsistent with the level of limitation opined.

**B.    Duty to Develop the Record**

The ALJ has an independent duty to fully and fairly develop the record and assure the claimant's interests are considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts.  See id.  This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978).   Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty.  See Tonapetyan, 242 F.3d at 1150.  The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record.  See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

Plaintiff appears to argue that the ALJ failed to discharge the Commissioner's duty to develop the record.  According to plaintiff:

> If the ALJ did not believe the consultative examinations were sufficient, the ALJ could have subpoenaed the physicians; submitted questions to physicians; continued the hearing; or kept the record open. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998). The ALJ could have ordered a consultative examination. 20 C.F.R. §§ 404.1517; 416.917. The ALJ could have adduced testimony from a medical expert at the hearing. 20 C.F.R. §§ 404.936(c)(2); 416.1436(c)(2). See *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ may discharge this duty [to develop the record] in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record"). The ALJ did none of these things.

> ECF No. 16, pg. 18.

Plaintiff's argument is unpersuasive because it is based on a premise that is not supported by the hearing decision.  Plaintiff speculates "if" the ALJ did not find the opinions of Drs. Bermudez and Schwartz "sufficient," the ALJ should have developed the record further.  A review of the hearing decision, however, reflects that the ALJ did not find the doctors' opinions insufficient.  Nor did the ALJ specifically find the evidence to be inadequate.

11

Further, the Court finds that the evidence is not ambiguous.  While the various opinions are contradictory and, thus, subject to the ALJ's interpretation to resolve the conflict, none of the opinions themselves are ambiguous or otherwise unclear.  Each of the doctors rendered clear and concise opinions.  Simply because various opinions present a conflict does not mean any particular opinion is ambiguous such as would trigger the Commissioner's duty to develop the record.

### C.     Credibility

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

1    The Commissioner may, however, consider the nature of the symptoms alleged,

2    including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

3    947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

4    claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

5    testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

6    prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

7    physician and third-party testimony about the nature, severity, and effect of symptoms.  See

8    Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

9    claimant cooperated during physical examinations or provided conflicting statements concerning

10   drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

11   claimant testifies as to symptoms greater than would normally be produced by a given

12   impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

13   Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

14   Regarding reliance on a claimant's daily activities to find testimony of disabling

15   pain not credible, the Social Security Act does not require that disability claimants be utterly

16   incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

17   repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

18   does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

19   Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

20   Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

21   claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

22   restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

23   claimant was entitled to benefits based on constant leg and back pain despite the claimant's

24   ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

25   activities are not easily transferable to what may be the more grueling environment of the

26   workplace, where it might be impossible to periodically rest or take medication").   Daily

27   activities must be such that they show that the claimant is ". . .able to spend a substantial part of

28   his day engaged in pursuits involving the performance of physical functions that are transferable

13

to a work setting." <u>Fair</u>, 885 F.2d at 603.  The ALJ must make specific findings in this regard

before relying on daily activities to find a claimant's pain testimony not credible.  See <u>Burch v.</u>

<u>Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005).

At Step 4, the ALJ evaluated the credibility of plaintiff's statements and testimony.

See ECF No. 351-54.  The ALJ summarized plaintiff's statements and testimony as follows:

> The claimant alleges that he is unable to work due to a bad back,
> depression, anxiety, learning difficulty, difficulties with spelling and
> reading, bad knees, arm/elbow numbness, mood swings, anger issues,
> appetite loss, and a hernia (2E).  During the hearing held in September
> 2014, the claimant testified that he could walk 2 blocks, sit for 1 hour,
> stand for 3 hours, and had  no problems using his hands or reaching.  He
> testified that he went out to eat and for movies, and that he was able to
> cook, clean, do laundry, and grocery shopping.

CAR 351.

The ALJ found plaintiff's allegations partially credible: "These statements have

been found to affect the claimant's ability to work only to the extent they can reasonably be

accepted as consistent with the objective medical and other evidence."  <u>Id.</u>  The ALJ added:

> The evidence shows that the claimant has exertional and postural
> limitations due to lumbar degenerative disc disease, osteoarthritis of the
> lumbar spine, bilateral hip degenerative changes, an status post inguinal
> hernia repair.  The record shows that the claimant's back pain significantly
> pre-dates his amended onset date.  When treated in 2011, he was
> undergoing chiropractic care for chronic low back pain and was noted to
> have spinal pain "over the past 20 years" (1F/3).  This would indicate that
> he has managed to work and engage in substantial gainful activity for
> years despite his back pain.  Lumbar x-rays done in 2013, showed
> degenerative disc disease at L3/4 through L5/S1, a wedge deformity of L1
> that was likely developmental, and posterior subluxation at L3/4 (5F, 7F).
> Straight leg raising test were [sic] negative (5F).  August 2015 lumbar x-
> rays revealed no acute fracture of the lumbar spine and advanced
> osteoarthritis of the lower lumbar spine (Ex. 11F/1).  The claimant
> complained of pain and received Naproxen for pain.  He was discharged
> with instructions to follow-up with his PCP (Ex. 11F/5-6).  It was not until
> 2018 when MRI testing showed the claimant has mild to moderate
> degenerative changes in his hips (9F).  During his consultative exams, the
> claimant was also noted to have swelling due to an inguinal hernia (2F,
> 5F). He later underwent surgery to repair the hernia in December 2013
> (8F).  Later MRI testing showed a status post right inguinal hernia repair
> and a small fat containing left inguinal hernia, but there is otherwise no
> mention of problems or treatments for this condition (7F, 8F).
>
> The claimant also has manipulative limitations due to "probable bilateral
> carpal tunnel syndrome" (2F).  The record shows that the claimant was
> diagnosed with this condition in 2012, when he had positive Phalen's (2F).
> Despite that, Tinel's testing was negative and there was no tenderness over

14

1      the wrists or digits (2F).  His grip strength is 45/42 pounds on the right and
       63/60 pounds on the left (2F).  When reevaluated in 2013, there was no
2      mention of carpal tunnel syndrome, he had 5/5 grip strength, normal
       reflexes, and normal sensation in the upper extremities (5F).  In light of
3      the claimant's complaints and reports about carpal tunnel syndrome, one
       would have expected to see some EMG/NCS studies or further objective
4      testing for this condition.

5      CAR 351-52.

6                  After considering the medical opinion evidence, the ALJ provided the following

7      analysis of the credibility of plaintiff's statements and testimony in light of the record:

8                  When making this assessment, I noted several inconsistencies regarding
                   the claimant's allegations and the evidence.  Overall, the claimant has not
9                  generally received the type of medical treatment one would expect for a
                   totally disabled individual.  While the claimant testified that his conditions
10                 have worsened significantly, there is little objective support for those
                   allegations.  There is very little treatment history in the file since the
11                 original hearing.  What treatments there are, are essentially routine and/or
                   conservative in nature.  The claimant did undergo surgery for his hernia,
12                 and it appears that the surgery was generally successful in relieving the
                   symptoms as there are few reports of problems/symptoms afterward.
13                 While the claimant reported chronic pain when treated in 2015, his exams
                   were generally unremarkable at times (7F).  While he has some pain and
14                 range of motion deficits during exams, claimant's strength, range of
                   motion, gait/station, neurological exams, and reflexes are also repeatedly
15                 found to be within normal limits (2F, 5F, 7F).

16                 Functionally, the claimant's activities are generally consistent with a
                   medium exertional level.  There are also several inconsistencies in the
17                 claimant's allegations.  While the claimant initially reported that he has
                   not worked since November 2007, he was self-employed after that time
18                 (2E, 15D).  When treated in 2011, he listed self-employment as his current
                   or last work and his earnings records show self-employment income after
19                 that time (1F).  He reported that he was a mechanic and described it as
                   being very heavy work (1F).  His hobbies include restoring old cars (5F).
20                 At times, he reports he is able to life 25 pounds, walk for 30 to 60 minutes,
                   and sit for an hour (2F).  The record notes that the claimant is able to do
21                 laundry, wash dishes, vacuum, sweep, rake leaves, and do yard work (6E,
                   8E).  In 2013, he reported that he drove, grocery shopped, cooked, and had
22                 no problems with caring for his personal needs or managing his finances
                   (8E).
23
                   CAR 353-54.
24

25     The ALJ concluded: "[W]hile the record clearly shows that the claimant has some work related

26     limitations, it fails to establish that these limitations would preclude the ability to perform

27     substantial gainful activity. . . ."  Id. at 354.

28     ///

According to plaintiff: "The ALJ failed to assess Torres' testimony consistent with light work."  ECF No. 16, pg. 19.  Plaintiff argues:

> The ALJ rejected Torres' testimony stating that Torres has not generally received the type of medical treatment one would expect for a totally disabled individual noting very little treatment. AR 353. Torres testified that he had no insurance and was unable to obtain care. AR 62, 368. The record consistently noted the same. AR 296, 307, 318, 491, 592, 593, 596. The ALJ's discrediting of Torres for an inability to afford care is without merit. *Gamble v. Chater* 68 F.3d 319, 321 (9th Cir. 1995) ("it flies in the face of the patent purposes of the Social Security Act to deny benefits to someone who is too poor to seek treatment.") The ALJ's failure to address this issue warrants reversal.
>
> The ALJ further reasons that there is little objective support. AR 353. The ALJ notes that while Enriquez has some pain and range of motion deficits during exams, his strength ranges of motion gait/station neurological exams and reflexes are also repeatedly found to be within normal limits. AR 353. Again, the fact that one's motion, gait and neurological exam is not dire, may be indicative that the condition is not of listing level severity, it is not evidence that Torres is not as limited as he states nor does it discount the opinions of the doctors in this record. Dr. Schwartz and Dr. Bermudez both noted some objective findings ignored by the ALJ, and, in their professional opinion, limited Torres to, at the very least, light exertional work. AR 318, 327. The ALJ also fails to note the effects of the hernia before and after repair. It is not only a reduced range of motion, strength or sensation that warrants limitation. Torres record contains x-rays showing "*advanced osteoarthritis* of the lower lumbar spine" and chronic anterior wedging "most advanced in the lumbar spine, characterized by intervertebral disc space narrowing, osteophyte formation, *vacuum disc phenomenon*, and facet arthropathy." (Emphasis Added) AR 611. An MRI dated April 11, 2018, showed mild to moderate degenerative changes at both hips and a small fat containing left inguinal hernia. AR 606. This was after the hernia had already been repaired. The record is not inconsistent with Torres testimony of greater limitations or, more importantly, the light range of work at the very least. The record indicates that he can no longer do his past work due to his injuries repeatedly. AR 303, 306, 594, 599. It is without reason that the ALJ rejects Torres testimony based upon the medical record when both physician's opinion are more consistent with Torres' testimony than the findings of the ALJ.
>
> The ALJ lastly reasons that Torres activities are generally consistent with a medium exertional level. AR 353. The ALJ reasons that while Torres initially reported that he had not worked since November 15, 2007, he was self-employed after that time. AR 353. On Torres application, he listed his onset date as November 15, 2007. AR 178. Consistently, his earning record shows that his last year of substantial gainful activity with earnings of $28,228.24 was in 2007. AR 195. Torres earnings thereafter were $1,414.00 in 2008, $1,669.50 in 2010, and $2,815 in 2012. AR 195. He filed his application in 2012. AR 178. The remand record showed an additional $1,516.00 in 2013. None of these earnings are even close to substantial gainful activity. 20 C.F.R. 404.1574; POMS DI 10501.015. A willingness to try to engage in rehabilitative activity and a release by one's doctor to engage in such an attempt is clearly not probative of a present ability to engage in such activity. The distinction

between attempt and ability is recognized by both the statute, 42 U.S.C. § 422(c), and the regulations, 20 C.F.R. § 404.1536(a), which provide that work performed by a disabled worker during a trial period shall not be considered as evidence of whether that worker's disability ceased during such period. Social Security Ruling 84-25. See also *Cox v. Califano*, 587 F.2d 988 (9th Cir. 1978).

The ALJ also states that when treated in 2011, Torres listed self-employment as his current or last work and his earnings records show self-employment income after that time. The income post 2007 is noted above; however, at Exhibit 1F, the EDD application for state disability in 2011 and 2007 both list the onset date as 2007. AR 311-313. The form requires a return to work date; however, that is not a medical opinion. AR 313. The other reports therein indicate that he "was working but ever since 2007 he has been unable to work." AR 303, 306.

The ALJ states that he reported that he was a mechanic and described it as being very heavy work. AR 354. This is true before 2007 as he was a mechanic on large laundry machines. The ALJ further cites the consultative examiner statement that his hobby is restoring old cars. AR 324. The statement in isolation has no evidentiary value. We do not know what he is doing regarding restoration at all. The ALJ did not inquire at all. The ALJ asked:

> Q I m talking more in terms of fun things. What have you
>
> *stopped* doing that's enjoyable hobbies interests activities?
>
> A Mostly my hobby was just to be restoring old cars so I
> can't really.

(Emphasis Added). AR 56. The ALJ asked no more. Mrs. Torres stated he used work on cars for a hobby but does no longer. AR 231. This is insufficient rationale to reject Torres testimony.

Once the ALJ perceives a discrepancy, the ALJ should explain the significance of the discrepancy. See *Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir. 2000). Once a perceived inconsistency between the written record and the oral testimony arises, the ALJ must confront the claimant with the inconsistency and if an explanation is made address that explanation. See *Soto-Olarte v. Holder*, 555 F.3d 1089, 1092 (9th Cir. 2009). "It's true that an adverse credibility finding must be based on more than an innocent mistake, but [t]he concern underlying each of our decisions in this arena has been to avoid premising an adverse credibility finding on an applicant's *failure to remember non-material, trivial details…" Kaur v. Gonzales,* 418 F.3d 1061, 1064 (9th Cir. 2005). There is no deceit involved. See *Singh v. Holder*, 643 F.3d 1178, 1181 (9th Cir. 2011).

The fact that Torres can take his grandchild to school or do a few chores around the house "able to do laundry, wash dishes, vacuum, sweep, rake leaves and do yard work" is not equivalent to performing the medium range of work eight hours a day, five days a week. AR 354. The ALJ cites the function reports but therein it indicates that he had to take breaks and does not finish the task. AR 233, 239, 245. None of the activities reflected in the record would exceed the limitations identified by Torres or be equivalent to medium work activity on a full-time consistent basis. Remember that this case is about the inability to perform his past work and Torres is entitled to disability at light exertional work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.02.

1

2

3

4

5

6

7

8

9

10

"'Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.'" *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (quoting *Smith v. Califano*, 637 F.2d 968, 971 (3rd Cir.1981)). See also *Fair v. Bowen*, 885 F.2d at 603 (noting that "many home activities are not easily transferable to what may be the more grueling environment of the workplace") cited by *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 1991). Simply put, evidence that a claimant can participate in basic human function "is not determinative of disability." *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir.1989). See also *Gonzalez v. Sullivan,* 914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ erred in failing to make a "finding to the effect that the ability to perform those daily activities translated into the ability to perform appropriate work"). In this case, the ALJ did not rely on either of the permissible methods upon which an ALJ may rely on the performance of activities of daily living. The ALJ merely relied on the performance of the activities themselves, which is not enough.

ECF No. 16, pgs. 20-24.

11

12

13

14

15

16

Here, the ALJ cited four reasons for rejecting plaintiff's statements and testimony as not fully credible. First, the ALJ noted a lack of aggressive medical treatment despite allegedly disabling symptoms. Second, the ALJ cited plaintiff's work history after the alleged onset date. Third, the ALJ determined there was "little objective support" for plaintiff's allegations of worsening symptoms. Fourth, the ALJ found plaintiff's reported daily activities to be inconsistent with allegations of disabling symptoms. The Court discusses each in turn.

17

        1.      Lack of Aggressive Treatment

18

19

20

21

22

23

24

25

26

27

28

The ALJ found: "Overall, the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual." CAR 353. According to plaintiff, who states "he had no insurance," the ALJ erred by discrediting his testimony for "an inability to afford care." ECF No. 16, pg. 20. The Court disagrees with Plaintiff's characterization. The ALJ did not, contrary to plaintiff's suggestion, find plaintiff's testimony and statements not credible due to a complete lack of treatment explained by a lack of insurance. Here, the ALJ determined that what treatment plaintiff did seek and receive was conservative in nature. Specifically, the ALJ stated: "What treatments there are, are essentially routine and/or conservative in nature." CAR 353. Plaintiff points to no evidence in the record to show otherwise.

/ / /

18

1

   2.  <u>Work History</u>

2

    The ALJ noted:

3

> . . .While the claimant initially reported that he has not worked since
> November 2007, he was self-employed after that time (2E, 15D).  When

4

> treated in 2011, he listed self-employment as his current or last work and
> his earnings records show self-employment income after that time (1F).

5

> He reported that he was a mechanic and described it as being very heavy
> work (1F). . . .

6

    CAR 353.

7

8

Plaintiff argues the ALJ erred by citing plaintiff's work history because hist post-onset-date

9

earning were not at the substantial gainful level and his state unemployment file indicates plaintiff

10

reported ". . .ever since 2007 he has been unable to work."  ECF No. 16, pg. 22 (referencing CAR

11

303 and 306).

12

    Plaintiff's argument is not persuasive.  Plaintiff has alleged he became unable to

13

work due to disability in November 2007.  As plaintiff acknowledges in his brief: "Torres

14

earnings thereafter were $1,414.00 in 2008, $1,669.50 in 2010, and $2,815 in 2012."  <u>Id.</u>

15

(referring to CAR 195).  Despite not being at the substantial gainful level, plaintiff's ability to

16

work at any earning level after the alleged onset date of disability undermines his credibility.

17

Moreover, plaintiff's credibility is further undermined because, despite admitting to earnings

18

from work in 2008, 2010, and 2012, plaintiff reported to the state unemployment agency that he

19

has been unable to work since 2007.  On this record, the Court finds the ALJ did not err by citing

20

plaintiff's work history.

21

    3.  <u>Worsening Symptoms</u>

22

    According to the ALJ: "While the claimant testified that his conditions have

23

worsened significantly, there is little objective support for those allegations."  CAR 353.  From

24

this, plaintiff concludes "[t]he ALJ further reasons that there is little objective support."  ECF No.

25

///

26

///

27

///

28

16, pg. 22.  Plaintiff argues such a finding is contradicted by the evidence.  Plaintiff's argument is unpersuasive because it overstates the ALJ's finding.  The ALJ did not, as plaintiff suggests, state that plaintiff's testimony in total was generally unsupported by objective evidence.  Rather, the ALJ concluded that plaintiff's specific allegation of worsening symptoms was unsupported.  In particular, the ALJ noted that, despite plaintiff's allegation of symptoms which were disabling in 2007 and became worse over time, his treatment was conservative and almost non-existent since the original administrative hearing in September 2014.  See CAR 353.

### 4.   Daily Activities

Finally, the ALJ found plaintiff's reported daily activities are inconsistent with allegations of totally disabling symptoms.  Plaintiff contends the ALJ erred by relying on his daily activities without making specific findings as to whether such activities show an ability to engage in work-related tasks on a full-time competitive basis.  While the Court agrees with plaintiff that the ALJ did not make specific findings in this regard, and that the record shows his daily activities are somewhat limited, the Court does not agree that the ALJ erred.  Specific findings about whether a claimant's daily activities indicate an ability to engage in full-time work are required when daily activities are the sole factor cited by the ALJ.  Where, as here, other factors, discussed above, undermine a claimant's credibility, specific findings regarding daily activities are not necessary.  Put another way, even if the ALJ did err by not providing specific

///
///
///
///
///
///
///
///
///

findings regarding daily activities, any error would be harmless because the overall credibility

analysis remains nonetheless supported by proper reasoning and substantial evidence.


## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision

is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

ORDERED that:

1.      Plaintiff's motion for summary judgment, ECF No. 16, is denied;

2.      Defendant's motion for summary judgment, ECF No. 20, is granted;

3.      The Commissioner's final decision is affirmed; and

4.      The Clerk of the Court is directed to enter judgment and close this file.


Dated:  September 30, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE